JEREMIAH HAYES,

          Plaintiff,

v.                            **ORDER**

WALL RECYCLING, LLC,

          Defendant.

On October 26, 2023, Jeremiah Hayes ("Hayes" or "plaintiff") filed a complaint against Wall Recycling, LLC ("Wall" or "defendant") [D.E. 1]. On December 1, 2023, Wall moved to dismiss some of the claims in Hayes's complaint [D.E. 7] and filed a memorandum in support [D.E. 8].

On December 22, 2023, Hayes filed an amended complaint against Wall alleging a racially hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq. (count one), race discrimination in violation of Title VII (count two), race discrimination in violation of 42 U.S.C. § 1981 (count three), and wrongful discharge on the basis of race in violation of the public policy of North Carolina in the North Carolina Equal Employment Practices Act ("NCEEPA"), N.C. Gen. Stat. § 143-422.1 (count four). See [D.E. 12] ¶¶ 35–51.[1] On January 4, 2024, Wall moved to dismiss Hayes's second, third, and fourth claims [D.E. 13] and filed a memorandum in support [D.E. 14]. On January 16, 2024, Hayes filed exhibits in support of his amended complaint [D.E. 16]. On February 1, 2024, Hayes responded in

---

[1] In light of Hayes's amended complaint, the court denies as moot Wall's original motion to dismiss.

opposition to Wall's motion to dismiss [D.E. 18]. On February 13, 2024, Wall replied [D.E. 19]. As explained below, the court grants Wall's motion to dismiss and dismisses Hayes's second, third, and fourth claims.

I.

Wall provides full-service waste management and scrap metal recycling services for both commercial businesses and consumer needs in eastern North Carolina. See Am. Compl. [D.E. 12] ¶ 15. In June 2021, Hayes, an African-American, began working for Wall as a truck driver at Wall's Franklinton, North Carolina facility. See id. at ¶¶ 12–13. Wall scheduled Hayes to work Monday through Friday from 7:00 a.m. to 3:00 p.m. See id. at ¶ 14. Hayes received "a strong 90-day performance review" and had no "disciplinary actions." Id. at ¶ 16.

On February 11, 2022, Hayes arrived at Wall's Franklinton facility for his scheduled shift. See id. at ¶ 17. Hayes left the facility around 7:00 a.m., began his normal route, and returned to the facility around 2:30 p.m. See id. at ¶ 18. When Hayes returned to the facility, Wall's Supervisor, Brian Kiefer ("Kiefer"), was standing outside the facility with Wall's former Road Technician, Thomas Sewell ("Sewell"), a Caucasian man. See id. at ¶ 20. Kiefer "inexplicably began firing his gun at trees, trash, and other objects on the Franklinton facility premises." Id. Kiefer "discharged an entire magazine of ammunition." Id. Kiefer began reloading his weapon, and Sewell asked Kiefer if Kiefer was "allowed to be doing this," i.e., "shooting on company property." Id. at ¶ 21. Kiefer responded that he "can do whatever [he] want[s]." Id. During this conversation with Sewell, Kiefer repeatedly referred to a Hispanic Wall truck driver as a "spic" and told Sewell he would "shoot any nigger. I don't give a fuck." Id.

Kiefer noticed Hayes approaching him and "said something like 'another Franklin county nigger.'" Id. at ¶ 22. Hayes "respectfully asked Kiefer to stop shooting his gun." Id. Kiefer

2

acknowledged Hayes's request but finished reloading and began shooting at a squirrel. See id. Hayes feared for his safety and went home. See id. Hayes clocked out of work at 3:17 p.m. See id. Hayes does not allege in his amended complaint that he reported this interaction to his immediate supervisor Dan Jarboe ("Jarboe") or anyone else.

From February 14, 2022, until February 18, 2022, Hayes worked his normal scheduled shifts. See id. at ¶ 23. On February 21, 2022, Hayes told Jarboe that he would not attend work that day because he needed to get his driver's license renewed. See id. at ¶ 24. Jarboe told Hayes he needed Hayes's help preparing the Franklinton facility for impending state inspections and asked Hayes to get his driver's license renewed later that week. See id. Hayes agreed and went to work. See id. On February 22, 2022, Hayes worked his normal scheduled shift. See id. at ¶ 25. On February 23, 2022, at 7:13 a.m., Hayes texted Jarboe "Don't forget I'm taking off today to get my drivers license renewal." Id. at ¶ 26. Jarboe responded "Yes. Is the key to your truck under the tarp." Id. Hayes replied "Under the tarp," and Jarboe thanked Hayes. Id. At 8:35 p.m. that night, Hayes asked Jarboe if he had "a truck to drive for tomorrow so [he] kn[e]w what time to come in or not." Id. at ¶ 28. Jarboe did not respond. See id.

On February 24, 2022, Jarboe called Hayes and told him that Wall's Chief Operations Officer, Dustin Hill ("Hill"), had instructed Jarboe to terminate Hayes's employment for poor job performance. See id. at ¶ 29. Hayes told Jarboe he would return his work uniforms the following day. See id. On February 25, 2022, Jarboe texted Hayes, "Good morning sir I need to get your uniforms in today so they're not deduct it [sic] off your final paycheck." Id. at ¶ 30. Hayes returned his work uniforms that day. See id.

Hayes filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging race and disability discrimination. See id. at ¶ 11. In response to

3

Hayes's charge, Wall submitted a position statement and stated "Mr. Hayes was never terminated. Mr. Hayes abandoned his job." Id. at ¶ 32 (emphasis omitted); see [D.E. 16-1]. Wall's position statement also stated that Hayes "never returned to work after February 22." Am. Compl. ¶ 32; see [D.E. 16-1]. Thus, Wall considered Hayes "to have quit/abandoned his job." Am. Compl. ¶ 32 (emphasis omitted); see [D.E. 16-1]. On August 11, 2023, the EEOC issued Hayes a right-to-sue letter. See Am. Compl. ¶ 11.

After Hayes filed his original complaint in this action, Wall gave Hayes a termination notice. See id. at ¶ 33; [D.E. 16-2]. Wall's termination notice lists Hayes's last day of work as February 22, 2022. See Am. Compl. ¶ 33; [D.E. 16-2]. Wall's termination notice states that Wall fired Hayes for unsatisfactory performance. See [D.E. 16-2]. Specifically, Wall terminated Hayes for a "[l]ack of Post trip Pretrip that resulted operating truck low oil. Keeping truck clean." Id. Jarboe signed the termination notice. See id.

II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town

4

of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

"Determining whether a complaint states a plausible claim for relief . . . [is] a context specific task that requires the reviewing court to draw on judicial experience and common sense." Iqbal, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint does not suffice. Id.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." Id. (quotation omitted); see Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). Additionally, a court may take judicial notice of public records. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

Wall moves to dismiss Hayes's Title VII race discrimination claim, section 1981 race discrimination claim, and North Carolina wrongful discharge claim. See [D.E. 13]. The court

5

evaluates these claims under the same pleading standard. See, e.g., Love-Lane v. Martin, 355 F.3d 766, 786 (4th Cir. 2004); Bryant v. Aiken Reg'l Med. Ctrs., Inc., 333 F.3d 536, 543–45 (4th Cir. 2003); Henry v. Vaughn Indus., LLC, 450 F. Supp. 3d 671, 678 n.2 (E.D.N.C. 2020); Wilson v. Nash Edgecombe Econ. Dev., Inc., No. 5:19-CV-322, 2020 WL 5594538, at *8 (E.D.N.C. Sept. 18, 2020) (unpublished); Tran v. Novo Nordisk Pharm. Indus., Inc., Nos. 5:14-CV-254, 5:14-CV-429, 2016 WL 1559137, at *11 (E.D.N.C. Apr. 18, 2016) (unpublished) ("[A] claim for wrongful discharge in violation of the public policy set forth in the NCEEPA rises and falls with its counterpart under Title VII.").

Even though a race discrimination plaintiff need not plead a prima facie case to survive a motion to dismiss,[2] Swierkiewicz "left untouched the burden of a plaintiff to allege facts sufficient to state all the elements of [his] claim." Jordan v. Alt. Res. Corp., 458 F.3d 332, 346 (4th Cir. 2006) (emphasis and quotation omitted), overruled on other grounds by Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264 (4th Cir. 2015) (en banc); see McCleary-Evans v. Md. Dep't of Transp., 780 F.3d 582, 585 (4th Cir. 2015). In order to state a race discrimination claim under Title VII or section 1981, Hayes must plausibly allege that Wall discharged him because of his race. See 42 U.S.C. §§ 1981, 2000e-2(a)(1); McCleary-Evans, 780 F.3d at 585.

Hayes alleges Wall is liable under the "cat's paw" theory of liability. See [D.E. 18] 9, 11. In a "cat's paw case," a plaintiff seeks "to hold his employer liable for the animus of a supervisor who was not charged with making the ultimate employment decision." Staub v. Proctor Hosp., 562 U.S. 411, 415 (2011). "[I]f a supervisor performs an act motivated by [unlawful] animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate

---

[2] See Swierkiewicz v. Sorema N. A., 534 U.S. 506, 510–15 (2002).

cause of the ultimate employment action, then the employer is liable . . . ." Id. at 422 (footnote omitted); see Smyth-Riding v. Sci. & Eng'g Servs., LLC, 699 F. App'x 146, 155 (4th Cir. 2017) (unpublished) (applying Staub to a Title VII claim); Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 289–90 (4th Cir. 2004) (en banc), overruled in part on other grounds by Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009).

To proceed under the cat's paw theory, Hayes must plausibly allege (1) his supervisor harbored an unlawful animus, (2) his supervisor performed an act intended to cause an adverse employment action, and (3) Wall merely rubber-stamped his supervisor's recommendation. See, e.g., Ashanti v. City of Richmond Sch. Bd., No. 3:21CV494, 2023 WL 1110300, at *9 (E.D. Va. Jan. 30, 2023) (unpublished). Hayes's supervisor "cannot merely have substantial influence on the ultimate decision or play a significant role in the decision; rather, a supervisor's discriminatory animus may support liability only if the supervisor was, in effect, principally responsible for, or the actual decisionmaker behind, the action." Lim v. Azar, 310 F. Supp. 3d 588, 602 (D. Md. 2018) (quotations omitted); see Staub, 562 U.S. at 422; Hill, 354 F.3d at 291; Ousley v. McDonald, 648 F. App'x 346, 348–49 (4th Cir. 2016) (per curiam) (unpublished); Traore v. Balt. Police Dep't, Civ. No. 22-793, 2023 WL 8600553, at *9 (D. Md. Dec. 12, 2023) (unpublished).

To support his cat's paw theory, Hayes alleges that "[u]pon information and belief, Keifer [sic] provided negative job performance related information to Hill with the intent to have Hayes' employment terminated because of Keifer's discriminatory animus." Am. Compl. ¶ 27. "Although a plaintiff may initially plead parts of his case 'upon information and belief,' his allegations may not be wholly conclusory." Kashdan v. George Mason Univ., 70 F.4th 694, 701 (4th Cir. 2023); see, e.g., Mystic Retreat Med Spa & Weight Loss Ctr. v. Ascentium Cap. LLC, 615 F. Supp. 3d 379, 384–85 (M.D.N.C. 2022) (collecting cases); Lemon v. Myers Bigel, P.A.,

7

No. 5:18-CV-200, 2019 WL 1117911, at *16–17 (E.D.N.C. Mar. 11, 2019) (unpublished); Carter v. Va. Dep't of Game & Inland Fisheries, No. 3:16CV661, 2018 WL 3614975, at *9 (E.D. Va. July 27, 2018) (unpublished).

Hayes offers no factual support justifying his "information and belief" that Kiefer allegedly provided negative job performance-related information to Hill with the intent to have Wall fire Hayes. See Am. Compl. ¶ 27. Hayes's allegation is "far too speculative" because it lacks "facts supporting the allegation[]." Kashdan, 70 F.4th at 702 (quotation omitted); see Iqbal, 556 U.S. at 678.

Without Hayes's unsupported allegation about Kiefer, Hayes fails to plausibly allege race discrimination. Specifically, Hayes fails to plausibly allege that Hill or Jarboe harbored any discriminatory animus that motivated Hayes's firing. Accordingly, the court grants Wall's motion to dismiss Hayes's second, third, and fourth claims. See, e.g., Iqbal, 556 U.S. at 678; Traore, 2023 WL 8600553, at *9.

Alternatively, even if the court accepted Hayes's allegation that Kiefer allegedly provided negative job performance-related information to Hill with the intent to have Wall fire Hayes, Hayes's race discrimination claims still fail. To succeed on a cat's paw theory, "discriminatory animus may support liability only if [Kiefer] was, in effect, principally responsible for, or the actual decisionmaker behind" Hayes's firing. Lim, 310 F. Supp. 3d at 602 (quotations omitted). Hayes only alleges Kiefer "provided negative job performance related information to Hill with the intent to have Hayes'[s] employment terminated." Am. Compl. ¶ 27. Hayes fails to plausibly allege what "information" Kiefer provided. Hayes also fails to plausibly allege that Kiefer's alleged information was false, that Kiefer's alleged information caused Hill to fire Hayes, or that Hill "rubber-stamped" Kiefer's alleged recommendation to terminate Hayes's employment.

8

Ashanti, 2023 WL 1110300, at *9. At most, Hayes alleges Kiefer provided some information to Hill, and Wall later fired Hayes. Cf. [D.E. 19] 11. This allegation does not suffice to plausibly allege Wall's liability under the cat's paw theory of liability. See, e.g., Traore, 2023 WL 8600553, at *9. Accordingly, the court grants Wall's motion to dismiss counts two, three, and four.

Alternatively, if a plaintiff lacks direct evidence of race discrimination (as in this case), a plaintiff can proceed under the McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–03 (1973), burden-shifting framework. See [D.E. 18] 11 ("Plaintiff is not attempting to establish direct evidence of discrimination."); Hill, 354 F.3d at 284–85. The McDonnell Douglas framework consists of three steps: "(1) the plaintiff must first establish a prima facie case of employment discrimination or retaliation; (2) the burden of production then shifts to the employer to articulate a non-discriminatory or non-retaliatory reason for the adverse action; (3) the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the stated reason for the adverse employment action is a pretext and that the true reason is discriminatory or retaliatory." Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 216 (4th Cir. 2016). The McDonnell Douglas framework applies to failure to hire, termination, and retaliation claims under Title VII and section 1981. See, e.g., Williams v. Giant Food Inc., 370 F.3d 423, 430 (4th Cir. 2004); Beall v. Abbott Lab'ys, 130 F.3d 614, 619 (4th Cir. 1997), abrogated in part on other grounds by Gilliam v. S.C. Dep't of Juv. Just., 474 F.3d 134 (4th Cir. 2007).

To establish a prima facie case of race discrimination, Hayes must plausibly allege that (1) he was a member of a protected class, (2) he suffered an adverse employment action, (3) he was fulfilling his employer's legitimate expectations at the time of the adverse action, and (4) he was treated differently than a similarly situated employee outside the protected class. See, e.g., Goode v. Cent. Va. Legal Aid Soc'y, Inc., 807 F.3d 619, 626 (4th Cir. 2015), abrogated in part on other

9

grounds by Bing v. Brivo Sys., LLC, 959 F.3d 605, 611–12 (4th Cir. 2020); White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004); Tahir v. Sessions, No. 5:16-CV-781, 2017 WL 1735158, at *4 (E.D.N.C. May 2, 2017) (unpublished), aff'd, 703 F. App'x 211 (4th Cir. 2017) (per curiam) (unpublished).

Wall contends Hayes fails to plausibly allege "that he was treated differently from any similarly situated, non-African American employee of [Wall] with respect to the decision to terminate [Hayes's] employment." [D.E. 14] 21–22. Hayes responds and cites Wall's former employee, Sewell, as his comparator. See [D.E. 18] 12–13. Wall replies that Hayes fails to allege that he and Sewell "are similarly situated in all relevant respects." [D.E. 19] 12 (emphasis omitted).

To establish a valid comparator, the plaintiff must show that he and the comparator were "similar in all relevant respects." Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010) (per curiam) (unpublished); see Smith v. Stratus Comput., Inc., 40 F.3d 11, 17 (1st Cir. 1994); Barski v. Cyberdata Techs., Inc., No. 8:17-CV-3593, 2020 WL 4471827, at *6 (D. Md. Aug. 4, 2020) (unpublished); Wilson v. City of Chesapeake, 290 F. Supp. 3d 444, 457 (E.D. Va. 2018), aff'd, 738 F. App'x 169 (4th Cir. 2018) (per curiam) (unpublished). The comparator must have "dealt with the same supervisor, . . . been subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992); see Haynes v. Waste Connections, Inc., 922 F.3d 219, 223–24 (4th Cir. 2019); Haywood, 387 F. App'x at 359; Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993); Wilson, 290 F. Supp. 3d at 457–58. However, "a comparison between similar employees will never involve precisely the same set of work-related offenses occurring over the same period of

10

time and under the same sets of circumstances." Haynes, 922 F.3d at 223 (quotation omitted); see Cook, 988 F.2d at 511; Moore v. City of Charlotte, 754 F.2d 1100, 1107 (4th Cir. 1985). In the disciplinary context, "[t]he most important variables . . . and the most likely sources of different but nondiscriminatory treatment, are the nature of the offenses committed and the nature of the punishments imposed." Moore, 754 F.2d at 1105.

As for Sewell, Hayes alleges Kiefer discharged an entire magazine of ammunition and, when he began reloading the weapon, Sewell asked Kiefer if he was "allowed to be doing this," i.e., shooting on company property. Am. Compl. ¶ 21. Hayes alleges that Sewell is his comparator because Hayes also "asked Kiefer to stop shooting his gun," but Wall "did not terminate Sewell's employment despite questioning Kiefer about shooting a gun on company property." Id. at ¶¶ 21, 31. Thus, according to Hayes, Sewell's "offense" was questioning Kiefer about firing a gun on company property, but Wall treated Sewell more favorably by not terminating Sewell's employment. See [D.E. 18] 12–13.

This comparison makes no sense. Hayes's amended complaint states that Sewell was a "former Road Technician" with Wall. Am. Compl. ¶ 20. Thus, Sewell was not similarly situated with Hayes.

Alternatively, even if Sewell was a Wall employee on February 11, 2022, Hayes fails to plausibly allege that Hill or Jarboe had any knowledge of Sewell's alleged "offense." Cf. [D.E. 16-1]. Furthermore, Hayes fails to plausibly allege that his conduct during the shooting incident played any role in Wall's decision to terminate his employment. As discussed, Hayes's only allegation connecting Kiefer to Hayes's termination is that Kiefer allegedly "provided negative job performance related information to Hill." Am. Compl. ¶ 27. But "[i]t is the perception of the decision maker which is relevant." Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980); see King

11

v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003); Hawkins v. PepsiCo, Inc., 203 F.3d 274, 280 (4th Cir. 2000). Although Hayes and Sewell may have committed the same "offense" in the eyes of Kiefer, Hayes fails to plausibly allege Kiefer's information reached Hill or Jarboe, the relevant decisionmakers. Accordingly, the information could not have affected Wall's decision to terminate Hayes's employment. See, e.g., Holland v. Wash. Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007); Hooven-Lewis v. Caldera, 249 F.3d 259, 278 (4th Cir. 2001); Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998), abrogated on other grounds by Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53 (2006); see also Conrad v. CSX Transp., Inc., 824 F.3d 103, 108 (4th Cir. 2016); Gestamp S.C., L.L.C. v. NLRB, 769 F.3d 254, 261–62 (4th Cir. 2014).

Finally, Hayes fails to plausibly allege any valid comparator concerning Wall's stated reasons for firing Hayes. See [D.E. 16-1, 16-2]. Absent a valid comparator, Hayes's claim fails. See, e.g., McDonnell Douglas, 411 U.S. at 804; Cosby v. S.C. Prob., Parole & Pardon Servs., 93 F.4th 707, 714–17 (4th Cir. 2024); Spencer v. Va. State Univ., 919 F.3d 199, 207–08 (4th Cir. 2019); Haywood, 387 F. App'x at 359–60; Lightner v. City of Wilmington, 545 F.3d 260, 265 (4th Cir. 2008); Cook, 988 F.2d at 511; Moore, 754 F.2d at 1105–06; Matney v. Del Toro, No. 2:21-CV-2554, 2023 WL 6644591, at *15 (D.S.C. June 29, 2023) (unpublished), report and recommendation adopted by 2023 WL 6370658 (D.S.C. Sept. 30, 2023) (unpublished); Iskander v. Dep't of Navy, 116 F. Supp. 3d 669, 679–80 (E.D.N.C.), aff'd, 625 F. App'x 211 (4th Cir. 2015) (per curiam) (unpublished). Accordingly, the court grants Wall's motion to dismiss Hayes's second, third, and fourth claims.

III.

In sum, the court DENIES as moot defendant's motion to dismiss plaintiff's original complaint [D.E. 7], GRANTS defendant's motion to dismiss plaintiff's amended complaint [D.E. 13], and DISMISSES WITHOUT PREJUDICE plaintiff's Title VII race discrimination claim, section 1981 race discrimination claim, and North Carolina wrongful discharge claim. The parties SHALL engage in a court-hosted mediation with United States Magistrate Judge James E. Gates.

SO ORDERED. This 9 day of April, 2024.

JAMES C. DEVER III
United States District Judge